UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ELVIRA VIRDIANA GONZALEZ-RODRIGUEZ, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARIANA'S ENTERPRISES, et al.,<br><br>Defendants. | Case No. 2:15-cv-00152-JCM-PAL<br><br>**ORDER**<br><br>(Jt. Mot. Approve Settlement – ECF No. 36) |

This matter is before the court the parties' Joint Motion to Approve Settlement (ECF No. 36) (the "Motion"). This Motion is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and LR IB 1-3 and 1-7 of the Local Rules of Practice. The court set the matter for hearing on May 26, 2016, to explore issues that were not addressed in the Motion. Steve Parsons, Andrew Rempfer, and Joseph Mott appeared on behalf of the Plaintiffs, and James Tucker for the Defendants. At the conclusion of the hearing, the court requested that Plaintiffs' counsel supplement the record with the justification for the attorney's fees and costs sought in the lawsuit. Plaintiffs submitted a Supplement (ECF No. 39) on May 27, 2016.

**BACKGROUND**

Lead Plaintiff Elvira Virdiana Gonzalez-Rodriguez (the "Lead Plaintiff") commenced this suit by filing a Complaint (ECF No. 1) against Defendants Mariana's Enterprises, Anaya Enterprises, Anaya Enterprises, and Anaya Cheyenne (jointly, "Defendants") on January 27, 2015. In her Complaint, the Lead Plaintiff alleged that Defendants deprived her, along with others similarly situated, of overtime wages or improperly misclassified her as exempt from overtime provisions of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. The Lead Plaintiff sought to join a similarly situated group of employees whom Defendants

allegedly forced to work off the clock and did not compensate for such work. An additional 34 current and former employees (the "Opt-In Plaintiffs") have since consented to join this lawsuit. *See* Notices of Consent to Joinder (ECF Nos. 5–8, 13, 17, 24–35). This Order will refer to the Lead Plaintiff and the Opt-In Plaintiffs jointly as "Plaintiffs," unless otherwise noted.

In 2015, the Department of Labor ("DOL") also pursued an administrative action against Defendants, which reached a settlement in the early fall. *See* Mot. at 2–3. Pursuant to the settlement, each current and former employee that the DOL determined was owed back wages and received a settlement—50% of which was designated as back wages, and 50% as liquidated damages. The settlement reached by the DOL amounted to approximately $611 per person on average. The DOL did not settle the claims of the Plaintiffs in this action. *Id*.

Throughout the summer of 2015, the parties engaged in discovery. *See* Mot. at 2. After reviewing personnel files, wage records, and third-party records, Plaintiffs' counsel prepared a motion to certify a collective action. *Id*. However, Plaintiffs did not file the motion because of the parties' on-going settlement discussions. *Id*. On November 17, 2015, the parties participated in a settlement conference during which they successfully reached an agreement. *Id*. at 3. Attached to the Motion as Exhibit 1 is the parties' Proposed Settlement Agreement and Release ("Proposed Settlement").

Specifically, the parties' agreement provides for a "Gross Settlement Amount" of $90,000 to be used for a Settlement Fund for payments to the Plaintiffs and Plaintiffs' reasonable attorneys' fees and costs. *See* Proposed Settlement ¶ 1.12. Of that amount, the proposed formula would distribute the Gross Settlement Amount as follows: (1) Lead Plaintiff – $1,800; (2) 34 Opt-In Plaintiffs – $854 per person; and (3) Plaintiffs' counsel – $59,614 for attorneys' fees and costs incurred by Plaintiffs' counsel. *Id*. ¶ 5.3. The proposed $854 amount for the Opt-In Plaintiffs is approximately 40% more than the $611 average combined amount of back wages and liquidated damages received by those individuals who settled their claims through the Department of Labor. *Id*.

During oral argument, counsel advised the court that the DOL investigation covered all employees, but as individual employees elected to opt-in to this case, they were removed from

the settlement the DOL reached with Defendants on their behalf. During oral argument, Defendants' counsel provided the court with a copy of the summary of unpaid wages and settlement amounts reached between Defendants and the DOL. The court has now had an opportunity to review the agreements in camera. *See* May 26, 2016 Mins. of Proceedings (ECF No. 40). The settlement amounts negotiated by the DOL range from a low of approximately $40 to a high of approximately $5,000.

Defendants maintain that Plaintiffs are not entitled to any wages or damages under the FLSA. Mot. at 3. However, the parties agree that this action "involves disputed issues, including (1) whether Plaintiffs were paid for all hours worked, (2) whether Plaintiffs were even entitled to additional compensation under the FLSA; and (3) whether the Defendants acted in good faith as to bar all or part of Plaintiffs' claims." *Id*. at 4. The parties determined that the finality, cost, and time involved in continued litigation presented too much uncertainty to proceed. *Id*. at 3. The Motion represents that "Plaintiffs prefer to amicably resolve this matter, with each of them receiving up to a forty-percent (40%) premium compared to those individuals who administratively settled their claims" through the DOL. *Id*. The settlement amounts were based on information learned through the initial statements of claim, payroll records, weekly schedules, and paystubs, as well as the parties' negotiations. *Id*. at 4. The parties jointly represent that "there has been sufficient investigation and exchange of information to allow counsel for both parties to evaluate their claims and defenses and make recommendations regarding settlement." *Id*. at 3. They assert that the Proposed Settlement is a "fair and reasonable resolution of a bone fide dispute" and the product of "arms-length negotiations." *Id*. at 3–4.

## DISCUSSION

I. **PRELIMINARY APPROVAL OF SETTLEMENT FOR PLAINTIFFS' FLSA CLAIMS**

   A. **Applicable Legal Standard**

The FLSA regulates the minimum wages and overtime compensation paid to workers. 29 U.S.C. §§ 206–207; *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1143–44 (9th Cir. 2007). To penalize violations of §§ 206 and 207 of the FLSA, § 216 states that employers are

"liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The FLSA also provides a private right of action enabling workers to maintain a lawsuit against their employer on "behalf of himself or themselves and other employees similarly situated," *i.e.* a collective action. *Id*. *See also Gray v. Swanney-McDonald, Inc.*, 436 F.2d 652, 655 (9th Cir. 1971).

The Supreme Court recognized that an employee's right to fair payment cannot be diminished by contract or waived because that would nullify the purpose of the FLSA and thwart the legislative policies it was designed to effectuate. *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 740 (1981); *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act."). This extends to settlement agreements. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1236–37, n.8 (M.D. Fla. 2010) (collecting cases). Accordingly, any settlement of an FLSA collective action requires the supervision of either the Secretary of Labor or the district court. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982) (citing *Brooklyn Savings*, 324 U.S. at 706–07).

Despite the provision authorizing collective actions, the FLSA does not explicitly provide how courts are to manage such actions. In addition, the Ninth Circuit has not established criteria for a district court to consider in determining whether an FLSA settlement should be approved. Most district courts in this circuit have evaluated a proposed settlement under a standard established by the Eleventh Circuit in *Lynn's Food*, which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." 679 F.2d at 1355.[1] Following *Lynn's Food*, a district court may approve a proposed settlement in an FLSA

---

[1] *See, e.g.*, *Selk v. Pioneers Mem'l Healthcare Dist.*, --- F. Supp. 3d ----, No. 13-cv-244-BAS-BGS, 2016 WL 519088, at *9 (S.D. Cal. Jan. 29, 2016); *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, No. 10-cv-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012); *Trinh v. JPMorgan Chase & Co.*, No. 07-cv-01666, 2009 WL 532556, at *1 (S.D. Cal. Mar. 3, 2009); *Goudie v. Cable Commc'ns, Inc.*, No. 08-cv-507-AC, 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009); *Hand v. Dionex Corp.*, No. 06-cv-1318-PHX-JAT, 2007 WL 3383601, at *1 (D. Ariz. Nov.13, 2007); *Yue Zhou v. Wang's Rest.*, No. 05-cv-0279 PVT, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007).

1  collective action if the settlement reflects "a reasonable compromise" over issues that are
2  "actually in dispute." 679 F.2d at 1354; *see also Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307
3  (11th Cir. 2013) (reaffirming holding of *Lynn's Food* as to a district court's approval of
4  stipulated judgment to settle FLSA claims).[2]

   At the preliminary approval stage, the court need only "determine whether the proposed settlement is within the range of possible approval." *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)). The court is primarily concerned with "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." *Murillo*, 266 F.R.D. at 479.

   **B.     Analysis of the Proposed Settlement**

   **1.     <u>Fairness and Reasonableness of the Proposed Settlement</u>**

   Plaintiffs ask the court to determine that the Proposed Settlement represents a fair and reasonable resolution of a bona fide FLSA dispute. Mot. (ECF No. 36) at 3–5. The Motion asserts the court should approve the settlement because the parties determined that the finality, cost, and time, involved in continued litigation presents too much uncertainty for the parties to proceed. At all times the parties were represented by counsel experienced with FLSA claims. During oral argument, counsel indicated that the amounts each individual Plaintiff could claim in this case did not justify the attorney's fees and costs incurred to date, or the fees and costs that would be incurred to determine the exact amount claimed. The parties therefore determined that a fair and reasonable settlement of the parties' disputes is represented in a formula derived from the average amount received by those Plaintiffs covered by the DOL action, adding a 40% premium, and payment of the agreed-upon amount of attorney's fees and costs.

---

[2] To determine whether a settlement is fair and reasonable, some district courts have implicitly or explicitly considered the factors used to evaluate Rule 23 class action settlements. However, given the significant differences in the respective joinder processes of Rule 23 and the FLSA (*i.e.* opting-in versus opting-out), district courts are not constrained by the mandates for proposed settlement of Rule 23 class actions. *See Genesis Healthcare*, 133 S. Ct. at 1528.

5

The Court finds that the Proposed Settlement is the product of arms-length, informed negotiations. The parties reached this settlement after the DOL conducted an extensive investigation on behalf of all other employees and determined that Defendants owed the employees back wages and liquidated damages. The DOL's extensive investigation is reflected in its employee-by-employee summary of unpaid wages. The DOL settled claims on behalf of all employees of the Defendants except those who opted-in to this litigation. The parties have had the benefit of the investigation conducted by the DOL, and are thus informed of the strengths and weaknesses of their respective positions. Plaintiffs will each receive 50% of the amount allocated for back wages and 50% for liquidated damages. Given the uncertainty of recovery and the modest amount in dispute, the court agrees that the parties' proposal represents a fair and reasonable settlement of their disputes. With the exception of the confidentiality provision, and the amount of the settlement allocated to attorneys' fees, the court finds the terms fair and reasonable.

### 2. **Confidentiality Provision**

The weight of authority holds that the FLSA does not support confidentiality provisions in settlement agreements. To further Congressional intent of "private–public" rights under the FLSA, numerous courts have determined that confidentiality provisions in FLSA settlement agreements do not further resolution of a bona fide dispute between the parties. *See e.g.*, *Dees*, 706 F. Supp. 2d at 1242 (discussing the FLSA's requirement that employers display a detailed notice of employee rights); *Briggins v. Elwood TRI, Inc.*, 3 F. Supp. 3d 1277, 1289–90 (N.D. Ala. 2014). "By including a confidentiality provision, the employer thwarts the informational objective of the notice requirement by silencing the employee who has vindicated a disputed FLSA right." *Dees*, 706 F. Supp. 2d at 1242.

Acknowledging the unequal bargaining power between employers and employees, the FLSA rejects confidentiality provisions in settlement agreements as contrary to the statutes' terms and legislative purpose. *Id.* (quoting *Brooklyn Savings*, 324 U.S. at 706–07). Confidentially agreements also undermine and contravene the court's role in FLSA collective actions:

> An employer who pays less than the minimum wage or who pays no overtime has no incremental incentive to comply voluntarily with the FLSA, if, after an employee complains, the employer privately compromises the claim for a discount-an amount less than the full amount owed under the FLSA (plus, with savvy negotiation, a confidentiality agreement to preclude the spread to other employees of information about the FLSA).

*Id*. at 1237. Conversely, when judicial approval is required and confidentially provisions are rejected, "the discount might become unavailable and the undiscounted principal owed the employee might increase (for example, as a result of liquidated damages or a more refined damage computation)," and both of these prospects encourage voluntary compliance and support the DOL's regulatory effort to notify employees of their FLSA rights. *Id*. Accordingly, a district court "should reject as unreasonable a compromise that contains a confidentiality provision, which is unenforceable and operates in contravention of the FLSA." *Id.* at 1242–43.

Here, the Proposed Settlement contains a provision titled "Confidentiality," which restricts the collective members from discussing the settlement:

> Plaintiffs, Plaintiffs' Counsel, Defendants, and Defendants' Counsel shall not, directly or indirectly, on their own or through a third party, make any statement, publish any statement, respond to any press or media inquiries, or issue any communication, written or otherwise to or in the media, including but not limited to, print, television, radio and the internet, that refers to the Litigation or Plaintiffs' claims, or that discloses or communicates the Gross Settlement Amount or any portion thereof (including the individual allocations thereof including Settlement Funds, attorneys' fees, and costs) or other terms of this Agreement. Any press or media inquiries may be responded to by stating only that the matter was fairly resolved to the mutual satisfaction of the Parties.
>
> In the event the Court requires the Agreement to be filed in the public record, Plaintiffs, Plaintiffs' Counsel, Defendants, and Defendants' Counsel are only permitted to disclose the name, case number, and Court docket number of the Agreement, but shall not disseminate through any mode or means a copy of the Agreement or its contents to any other person or entity, except as provided in this Agreement.

Proposed Settlement ¶¶ 20.1–20.2.

The Motion discloses the settlement amounts and terms by attaching the Proposed Settlement, and the agreement is now part of the public record. Neither side requested to seal the agreement. The court will not approve confidentiality provisions which run in contravention to the FLSA's broad remedial objectives. Additionally, as a practical matter, the provision was rendered unenforceable when the parties elected to file the settlement agreement in the public record and publicly disclosed the terms of the settlement agreement in the joint motion.

### 3. **Plaintiffs' Attorneys' Fees and Costs**

The FLSA provides for settlement agreements to include an award of reasonable fees. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). In the context of an FLSA collective action, a court must determine the reasonableness of attorneys' fees to minimize the conflicts that may arise between counsel and the plaintiffs. *Goldsby v. Renosol Seating, LLC*, 294 F.R.D. 649, 655 (S.D. Ala. 2013). The amount of attorneys' fees and costs allocated in an FLSA settlement should be "reached separately and without regard to the amount paid to Plaintiffs." *Id.* The Ninth Circuit has expressly rejected the notion that a defendant's agreement not to contest the amount of a fee award will "relieve the district court of its duty to assess fully the reasonableness of the fee request." *In re Bluetooth Headset Products Liab. Litig.* ("*Bluetooth*"), 654 F.3d 935, 943–44 (9th Cir. 2011) (citation omitted).[3]

Here, the parties' agreement provides for a $90,000 settlement fund, or "common fund," to be used for payments to Plaintiffs as well as Plaintiffs' attorneys' fees and costs. *See* Proposed Settlement at ¶¶ 1.12–1.13.

   a. *Percentage Method for Determining the Reasonableness of the Requested Attorneys' Fees*

The Ninth Circuit has recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). This rule is commonly known as the "common fund doctrine." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). A "common fund" exists when each settling plaintiff has "an undisputed and mathematically

---

[3] *See also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 & n.20 (9th Cir. 1999) (collecting cases) ("[W]hether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper."); *In re Coordinated Pretrial Proceedings*, 109 F.3d 602, 608 (9th Cir. 1997) ("In a common fund case, the judge must look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid. Their interests are not represented in the fee award proceedings by the lawyers seeking fees from the common fund.").

ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980)). "Fees awarded out of the common fund are thus apportioned among the class." *Id.* Common funds typically distribute whatever amount is left over after all expenses are paid to the settling plaintiffs. *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1126 (9th Cir. 2002) (citing *Zucker*, 192 F.3d at 1326). District courts in the Ninth Circuit frequently use common fund principles when determining the reasonableness of an attorney fee award in FLSA collective actions. *See, e.g.*, *Selk*, --- F. Supp. 3d ----, 2016 WL 519088, at *9 (S.D. Cal. Jan. 29, 2016).[4]

The Ninth Circuit has approved two different methods for calculating a reasonable attorneys' fee award depending on the circumstances—the lodestar method and the percentage method. *Bluetooth*, 654 F.3d at 941. In common fund cases, district courts have the discretion to calculate fees by either calculating a lodestar or awarding a percentage of the common fund. *Stetson*, 821 F.3d at 1165. The court may also use lodestar method, multiplying the number of reasonable hours worked by a reasonable rate, as a cross-check on the reasonableness of fees awarded through a percentage method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050–51 (9th Cir. 2002). Although courts have discretion to choose which calculation method they will use, "[r]easonableness is the goal" of both methods. *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 739 (9th Cir. 2016). Thus, the Ninth Circuit has cautioned against a mechanical or formulaic application of either method where it would yield an unreasonable result. *Id*. *See also Bluetooth*, 654 F.3d at 942 (the court's "discretion must be exercised so as to achieve a reasonable result").

Under the percentage method, "the court simply awards the attorneys a percentage of the fund." *Staton v. Boeing*, 327 F.3d 938, 968 (9th Cir. 2003). There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private

---

[4] *See also, e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 457 (9th Cir. 2009) (unpublished decision) (district court did not abuse its discretion in hybrid FLSA/state law class action by approving 25% of common fund as attorney fee award), *aff'g*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 981–82 (E.D. Cal. 2012); *Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009); *Gribble v. Cool Transports Inc.*, No. 06–cv–04863-GAF-SHX, 2008 WL 5281665, at *11 (C.D. Cal. Dec. 15, 2008).

1 market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires. *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374–77 (N.D. Cal. 1989).

The "benchmark" percentage award in common fund cases is 25% of the recovery obtained. *See, e.g.*, *Stanger*, 812 F.3d at 738; *Stetson*, 821 F.3d at 1165. A court can then adjust this percentage upward or downward to "account for any unusual circumstances" involved in the case. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (noting that percentage awards ordinarily range from as little as 20% to as much as 30%). However, a fee award of one-third represents the outer bounds of an appropriate award in common fund cases. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449–50 (E.D. Cal. 2013) (collecting cases). When departing from the "benchmark," court must provide "adequate explanation in the record of any 'special circumstances' justifying a departure." *Bluetooth*, 654 F.3d at 942 (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

The ultimate amount must be supported by findings that take into account all of the circumstances of the case. *Vizcaino*, 290 F.3d at 1047–50. In determining whether the percentage requested is fair and reasonable, district courts may consider factors including: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of counsel's work; (5) the contingent nature of the fee and the financial burden; and (6) awards made in similar cases. *Barbosa*, 297 F.R.D. at 449 (citing *Vizcaino*, 290 F.3d at 1047–50).

This court finds it appropriate to apply the percentage of recovery method to determine the reasonableness of counsels' request for attorneys' fees and costs. Plaintiffs' counsel seeks $59,614 in attorneys' fees. *See* Proposed Settlement ¶ 5.3. This figure constitutes approximately 66% of the $90,000 settlement fund, which far exceeds the 25% benchmark set by the Ninth Circuit. The requested percentage also exceeds the 40% contingency fee agreement Plaintiffs' counsel reached with their clients for this case. *See* Decl. of Andrew Rempfer (ECF No. 39) ¶ 8.

The parties' proposed settlement agreement indicates that Defendants take no position on the reasonableness of the attorneys' fees and costs. *See* Proposed Settlement ¶ 4.1. However,

1  the Motion represents that "the Parties stipulate that the amount allocated for attorney's fees and
2  costs is reasonable based on the amount of time actually spent by Plaintiffs' counsel in
3  prosecuting and ultimately resolving these claims." Mot. at ¶ 16.  Additionally, during oral
4  argument on the Motion, Defendants' counsel indicated that the legal fees and costs the
5  Defendants incurred exceeded the attorney's fees and costs sought by Plaintiffs' counsel in this
6  case.  Nevertheless, the parties' stipulation on the reasonableness of the fee request does not
7  relieve the court of its "duty to assess fully the reasonableness of the fee request." *See Bluetooth*,
8  654 F.3d at 943–44.

9  Plaintiffs' counsel has not demonstrated special circumstances for exceeding the 25%
10 benchmark and the contingency fee agreement.  The court expressed its concerns to the parties
11 during the May 26, 2016 hearing and asked Plaintiffs' counsel to supplement the record with the
12 justification for the requested attorney's fees and costs. *See* Mins. of Proceedings (ECF No. 40).
13 The following day, Plaintiffs submitted a Supplement (ECF No. 39), which included a
14 declaration by lead counsel.  The court has now reviewed the declaration, which provides
15 reasons why counsel believes the fee request is fair and reasonable.  Counsel states that his firm
16 "achieved a result for the opt-in Plaintiffs, and Plaintiff, that exceeded what the Department of
17 Labor, with its incredible resources, did." *Id*. ¶ 15.C.  This case was both difficult and somewhat
18 novel because "it involved an intense amount of personal interaction with non-English speaking
19 clients." *Id*.  Counsel further represents that the case is novel because the firm was approached
20 by individuals dissatisfied with the DOL's proposed settlement, and this caused the firm "to
21 somewhat conflict" with the DOL's position regarding settlement. *Id*.  Finally, counsel asserts
22 that, although they were retained on a 40% contingency, had the firm charged an hourly rate, the
23 "fees would have exceeded the proposed settlement." *Id*. ¶ 15.E.

24 Mr. Rempfer performed the vast majority of the work done on this case.  He has
25 extensive experience in employment law, an area in which he specializes.  He has taught
26 employment law seminars both locally and nationally.  He has been recognized for his extensive
27 *pro bono* work by the Clark County Bar Association and members of Nevada's congressional
28 delegation. The court is aware of his reputation, and quality of work performed in FLSA and

11

other employment cases and the fact that he has successfully prosecuted cases resulted in class and conditional class certification. However, the fee application is based on an estimate that Mr. Rempfer spent over 140 hours working on this case. The bulk of his time was spent reviewing over 5,000 pages of wage records and documents received from the DOL. The court does not doubt that he performed this work. However, as in any case undertaken on a contingency fee basis, the outlay of time and resources is undertaken with no guarantee of receiving any fees. Additionally, as a lawyer experienced in FLSA actions, counsel is charged with knowledge of Ninth Circuit law holding that a 25% award is the benchmark, and 33% represents the outer marker.

Counsel has not demonstrated "special circumstances" not typically present in other common fund cases that justify an award in excess of the benchmark. *See, e.g.*, *Ontiveros v. Zamora*, 303 F.R.D. 356, 373 (E.D. Cal. 2014) (rejecting attorneys' fee request for 33% award). The DOL conducted a thorough investigation of Plaintiffs' claims, which resulted in a summary of their unpaid wages. There is little doubt that the results of the DOL's investigation and settlement in the early fall of 2015 benefited the parties' settlement negotiations in November 2015. Counsel advised the court that Plaintiffs approached him because they were dissatisfied with the DOL's numbers. The Motion claims this settlement involves a 40% premium over the amounts received by employees covered by the DOL settlement. However, the DOL settled based on an employee-by-employee investigation and analysis of actual wage losses and liquidated damages alleged to be attributable to FLSA violations. The individual DOL settlement payments ran from a low of just under $40 to a high of over $5,000. Counsel state that it would take too much time and resources to do individual calculations of their clients' actual losses according to their theory of the case and that the time and resources spent would likely exceed the amount of the total recovery. Therefore, they negotiated an agreement to make a pro rata distribution to each Plaintiff. The Motion does not address whether the Plaintiffs have agreed to this approach, and does not ask for preliminary approval subject to their clients' right to object. Rather, the Motion seeks to impose the settlement on clients dissatisfied with how the DOL investigated and settled their potential claims with their employer.

1     Additionally, counsel did not cite a case finding that a fee award of 66% was reasonable, and the court was unable to find any cases awarding over 33.3%. *See Barbosa*, 297 F.R.D. at 449–50. Accepting that counsel spent the amount of time claimed, that it is a difficult case and involved an unusual amount of time spent communicating with a number of non-English speaking clients, counsel have provided no justification for an award larger than the 40% contingency agreement reached with their clients. Additionally, although counsel achieved a negotiated recovery from the employer for their clients, they have not shown unusual circumstances justifying an upward deviation from the 25% common fund benchmark.

b.    *The Lodestar Cross-Check*

To determine the amount of a reasonable attorney fee using the lodestar method, district courts typically proceed in two steps. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). In the first step, the court multiplies the number of hours reasonably expended by a reasonable hourly rate. *Ryan v. Editions Ltd. W.*, *Inc.*, 786 F.3d 754, 763 (9th Cir. 2015). The product of this computation is sometimes referred to as the "lodestar figure" and in most cases it is a "presumptively reasonable" fee. *Gonzalez*, 729 F.3d at 1202 (citing *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006)). In the second step, the district court may adjust the lodestar upward or downward based on a variety of factors. *Gonzalez*, 729 F.3d at 1202 (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008)).

A reasonable hourly rate should reflect the prevailing market rates of attorneys practicing in the relevant community. *Id.*; *see also Camacho v. Bridgeport Fin.*, *Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). The relevant "community" is the district in which the court sits. *See Camacho*, 523 F.3d at 979. In calculating a reasonable fee award, a district court has discretion to reduce an attorney's rate to ensure that it is " 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation'." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1110 (9th Cir. 2014) (quoting *Camacho*, 523 F.3d at 978). Rate determinations in other cases in the District of Nevada have found hourly rates as much as $450 for a partner and $250 for an experienced associate to be the prevailing market rate in this

/ / /

13

district.[5] A rate of $400 per hour has been described as "at the top of the market," but has been found reasonable in complex matters. *Marrocco v. Hill*, 291 F.R.D. 586, 589 (D. Nev. 2013).

The party seeking an award of fees must submit evidence supporting the rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015) (requiring proof of market rates in the relevant community). The movant " 'has an initial burden of production,' to produce 'satisfactory evidence' that the fee requested is reasonable." *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1224–25 (9th Cir. 2016) (quoting *$28,000 in U.S. Currency*, 802 F.3d at 1105). The movant's "initial duty of production is not excused by lack of opposition." *Id*. at 1225. Once a movant discharges its initial burden of production, the court will make a factual determination as to whether the requested fee is reasonable. *$28,000.00 in U.S. Currency*, 802 F.3d at 1105 (citing *Grove v. Wells Fargo Fin. Cal.*, *Inc.*, 606 F.3d 577, 582–83 (9th Cir. 2010).

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *Beauchamp*, 816 F.3d at 1224 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). However, declarations of the fee applicant do not conclusively establish the prevailing market rate. *Camacho*, 523 F.3d at 980.

In addition to evidence supporting the rates claimed, the party seeking an award of fees must submit evidence supporting the hours worked. *Hensley*, 461 U.S. at 433; *see also*

---

[5] *See*, *e.g.*, *Marrocco v. Hill*, 291 F.R.D. 586 (D. Nev. 2013) (finding reasonable hourly rate in community of Nevada to be $375–$400 for partner with over thirty-five years of experience); *Agarwal v. Oregon Mut. Ins. Co.*, 2013 WL 5882710 (D. Nev. Oct. 30, 2013) (finding $300 per partner hour and $260 per associate hour reasonable); *Stephens Media LLC v. Citihealth*, *LLC*, 2013 WL 4045926 (D. Nev. Aug. 7, 2013) (finding rates between $400 and $185 to be reasonable); *In re USA Commercial Mortg. Co.*, 2013 WL 3944184 (D. Nev. July 30, 2013) (finding rates between $170 and $420 to be reasonable and $275 to $775 to be unreasonable); *Cervantes v. Emerald Cascade Restaurant Sys.*, *Inc.*, 2013 WL 3878692 (D. Nev. July 25, 2013) (finding $450 to be excessive and reducing it to $275); *Plaza Bank v. Alan Green Family Trust*, 2013 U.S. Dist. LEXIS 58657 (D. Nev. April 24, 2013) (finding $425–$475 for partner time reasonable, but $275–$375 for associate time to be excessive based on the prevailing market rate and adjusting the amount to $250–$325); *Aevoe Corp. v. Shenzhen Membrane Precise Electron*, *Ltd.*, 2012 WL 2244262 (D. Nev. June 15, 2012) (finding $400 reasonable for a partner in a firm that concentrates on complex intellectual property litigation).

*$28,000.00 in U.S. Currency*, 802 F.3d at 1105 (noting that the evidence must include "detailed documentation of the hours worked"). Where the documentation of hours is inadequate, the district court may reduce the award accordingly. *Hensley*, 461 U.S. at 433.

In this case, the declaration states that the hourly rates for the attorneys who worked on this case are as follows: $450 for partner Andrew Rempfer, $650 for partner Steven Parsons, and $275 for associate Joseph Mott. *See* Rempfer Decl. (ECF No. 39) ¶¶ 5, 11, 12. Although billing records are not attached to the declaration, counsel estimates the following hours were expended on this case: 140 hours by Mr. Rempfer, 10 hours by Mr. Parsons, and 35 hours by Mr. Mott. Based on these rates and hours expended, counsel declares that $79,125 is the lodestar figure. *Id.* ¶ 13. The declaration asserts that the requested fee award is reasonable because the purported lodestar figure is roughly $20,000 higher than the requested $59,614 in attorneys' fees. *Id.*

Documentation of counsel's hourly rate and hours expended is insufficient allow a lodestar cross-check. First, the hourly rates of $450 and $650 per hour are well over the range of hourly rates approved in this district. The affidavit does not aver that these rates are usual or customary for this type of work in this locality, only that these rates are what each lawyer typically charges. Second, there are no billing records. The declaration states that the firm does not ordinarily send client invoices documenting the time spent on contingency cases such as this one. *Id.* ¶ 8. Presumably, this means that such billing records are not available because counsel does not track their hours in such cases. Ninth Circuit case law requires proper evidence of the hours expended and counsel's practices for contingency cases do not relieve them of their duty of production. Finally, using the lodestar method as a cross check on the reasonableness of a percentage award "measures the lawyers' investment of time in the litigation." *Vizcaino*, 290 F.3d at 1050. If the lawyer's investment of time is minimal, the lodestar may convince a court that a lower percentage is reasonable. *Id.* Where litigation has been protracted, the lodestar can be helpful in suggesting a higher percentage. *Id.* However, "the primary basis of the fee award remains the percentage method." *Id.* Litigation in this case was not protracted. In fact, it does not appear that the parties engaged in any formal discovery. The court finds the percentage

/ / /

method and the Ninth Circuit 25% benchmark for attorneys' fees is reasonable and appropriate in this case. Accordingly, the court approves attorneys' fees of $22,500.

### C. Litigation Costs

With regard to litigation expenses, there is "no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros*, 303 F.R.D. at 375; *see also* 29 U.S.C. § 216(b).

Here, the parties' agreement did not set forth a specific amount for litigation costs. Counsel's declaration states that the costs were: $450 in filing fees, $100 for service of process, and approximately $250 in copying charges. *See* Rempfer Decl. ¶ 10.F. Additionally, the parties' agreement indicates that the Lead Plaintiff will receive $1,800 as a service payment. *See* Proposed Settlement ¶ 5.3. Although these costs are only documented through the declaration and Proposed Settlement, the court finds that the modest amount of costs requested are reasonable and in line with costs in other FLSA cases in this district. The court therefore grants the $800 total in requested costs, and the $1,800 service payment to the Lead Plaintiff.

Having reviewed and considered the matter,

**IT IS ORDERED:** the parties' Joint Motion to Approve Settlement (ECF No. 36) is **GRANTED IN PART AND DENIED IN PART** consistent with this order. The $90,000 gross settlement amount is approved. Attorneys' fees of $22,500, $800 in costs, and the $1,800 service payment to the Lead Plaintiff are approved. The balance of $64,900 shall be distributed to all 35 Plaintiffs on a pro rata basis.

Dated this 13th day of July, 2016.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE